

04/15/2026

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **Jerome W.H. NISWONGER** | § | |
| xxx-xx-0625 | § | |
| **and Brenda C. NISWONGER** | § | Case No. 23-60394 |
| xxx-xx-6505 | § | |
| PO BOX 910, Athens, TX, 75751. | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| | § | |
| NATIONAL LOAN | § | |
| ACQUISITIONS COMPANY | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 24-6005 |
| | § | |
| JEROME W.H. NISWONGER | § | |
| and BRENDA C. NISWONGER | § | |
| | § | |
| Defendants | § | |

## MEMORANDUM OPINION

ON THIS DATE the Court considered the "Motion for Summary Judgment" filed by Jerome W.H. Niswonger and Brenda C. Niswonger (collectively, the "Niswongers") on January 25, 2025, and the objections, replies, and other documents filed in the above related adversary proceeding. Upon review of the pleadings, summary judgment evidence, and the relevant legal authorities, the Court concludes that genuine issues of material fact remain. For the reasons explained in this memorandum, the Niswongers' Motion for Summary Judgment is **DENIED**.

# I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a).  The Court has the authority to enter a final judgment in this adversary proceeding because it constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (J), and (O).

# II. Factual and Procedural Background[1]

Dr. Jerome and Mrs. Brenda Niswonger are the debtors in this case.[2] In 2012, the Niswongers executed a loan agreement with Wells Fargo for $1,330,000.00 (the "Wells Fargo Loan" or the "Loan"), which was secured by their residence under a deed of trust granted in favor of Wells Fargo.[3]  Much to their dismay, a wild-fire known as the "Camp Fire" destroyed their residence in Paradise, California in November 2018.[4]

On November 8, 2018, the day of the Camp Fire, the Wells Fargo Loan remained outstanding.[5]  On December 13, 2018, the Niswongers received a first installment of home insurance proceeds from the Camp Fire in the amount of $1,439,000.00.[6]  They were ultimately paid total insurance proceeds of $3,020,988.00.[7]  A few days later, on December 20, 2018, the Niswongers purchased a lifetime annuity from State Farm for $1,000,000.00 (the "Annuity").[8]  Their daughter, Arlana Mauk, was the insurance agent who

---

[1] This section is not intended to resolve any disputed or contested facts between the parties.

[2] Sadly, Dr. Niswonger is now deceased.

[3] *See* Def.'s Mot for Summ. J. at 5, ECF No. 41.

[4] *Id.* at 3.

[5] *Id.* at 3.

[6] *Id.* at 6.

[7] *See* Tr.'s Resp., Ex. B at 4, ECF No. 52.

[8] *See* Def.'s Mot for Summ. J. at 3, ECF No. 41.

helped them obtain this Annuity.[9]

It was routine between Wells-Fargo and the Niswongers to renew the Loan annually.[10]  Wells Fargo agreed to such an extension on February 28, 2019, at which time the principal balance was approximately $1,133,936.53.[11] On December 12, 2019, the Niswongers purchased a home in Athens, Texas, for $674,000.00 (the "Athens Home").[12]  At the time, the Niswongers were allegedly living in recreational vehicles ("RVs") and hotels in California.[13] The Niswongers defaulted on the Wells Fargo Loan in January 2020, roughly a month after purchasing the Athens Home.[14]

The Niswongers met with Wells Fargo representatives to discuss a potential settlement sometime in March 2020.[15]  The exact date and details of that meeting are disputed.  On March 31, April 1, and August 31, 2020, the Niswongers respectively purchased three additional vacant lots in Henderson County, Texas–Lots 92, 133, and 134 of Waters Edge Ranch Phase 1 (collectively, the "Texas Properties").[16]

Wells Fargo eventually sold the Loan to Plaintiff, National Loan Acquisition Company ("NLAC") on May 4, 2020.[17]  Sometime in May 2020, NLAC representatives met with the Niswongers regarding the Loan, to little

---

[9] *See* Tr.'s Resp., Ex. B at 53, ECF No. 52.

[10] *See* Def.'s Mot. for Summ. J. at 5, ECF No. 41.

[11] *See* Pl.'s Resp., Ex. A at 2, ECF No. 53.

[12] *See* Def.'s Mot. for Summ. J. at 5, ECF No. 41.

[13] *See* Tr.'s Resp. at 9, ECF No. 52.

[14] *See* Pl.'s Resp. Ex. A, at 3, ECF No. 53.

[15] *See* Pl.'s Resp., Ex. A at 7, ECF No. 53.

[16] *See* Def.'s Mot. for Summ. J., Exs 4–8, ECF No. 41.

[17] *See* Pl.'s Resp. Ex. A at 2, ECF No. 53.

effect.[18]  The Niswongers moved into the Athens Home in June of 2020.[19]  The next month, on July 10, 2020, the Niswongers formed Niswonger Properties, LLC, a Texas limited liability company.[20]

NLAC filed suit against the Niswongers on September 10, 2021, in California state court, asserting claims for breach of contract, fraudulent transfers and declaratory relief.[21]  This action is styled *NLAC v. Niswonger et al.,* Case No. 21-CV-02283, Superior Court, Butte County, California (the "California Action").[22]  Two years later, on August 15, 2023, the California state court imposed sanctions on the Niswongers for failing to appear at a scheduled deposition in Athens, Texas.[23]

One day after the California state court ordered sanctions, the Niswongers filed a chapter 7 case (the "Petition") on August 16, 2023.[24]  On August 22, 2023, they filed Official Form 106C ("Schedule C"), listing the Annuity, Athens Home, and Texas Properties as exempt assets.[25]

NLAC filed its Proof of Claim No. 11 ("NLAC's Proof of Claim"), on January 19, 2024, asserting a claim in the amount of $1,867,031.42.[26]  On February 19, 2024, NLAC objected to the Niswongers' claimed exemptions.[27]  The next day, on February 20, 2024, the Chapter 7 Trustee, Diane Carter (the "Trustee"), filed her respective objection to the Niswongers' claimed

---

[18] *Id.*

[19] *See* Def.'s Mot. for Summ. J., at 7, ECF No. 41.

[20] *See* Tr.'s Resp. Ex. A-11 at 96, ECF No. 52.

[21] *See* Def.'s Mot. for Summ. J. at 8, ECF No. 41.

[22] *See* Tr.'s Resp. at 8, ECF No. 52.

[23] *Id.*

[24] *See* Case No. 23-60394, ECF No. 1.

[25] *See* Case No. 23-60394, ECF No. 8, at 10-11.

[26] *See* Case No. 23-60394.

[27] *See* Case No. 23-60394, ECF No. 49.

exemptions.[28]

NLAC filed this adversary on February 21, 2024, objecting to the Niswongers' discharge under 11 U.S.C. § 727(a)(3) and (5).[29]  The Niswongers objected to NLAC's Proof of Claim on December 2, 2024.[30]

To efficiently hear these disputes, the Court entered a *Sua Sponte Order Regarding Case Management,* on February 11, 2025.[31]  That order mandates that although Case No. 24-6005 and NLAC and the Trustee's objections to the Niswongers' claimed exemptions were not formally consolidated, the matters involve common issues of fact and will proceed in parallel under the same scheduling order.[32]

The Niswongers filed their summary judgment Motion on January 29, 2025.[33]  NLAC and the Trustee filed their respective responses on March 12, 2025.  The Niswongers replied to NLAC and the Trustee's responses on March 26, 2025.

At a hearing at which all parties participated, this Court, on August 13, 2025, entered an order sustaining in part and denying in part the Niswongers' objection to NLAC's Proof of Claim.[34]  That order allows NLAC's claim in the amount of $1,769,569.98 and disallows all amounts in excess of that figure.[35]

---

[28] *See* Case No. 23-60394, ECF No. 52.

[29] *See* ECF No. 1.

[30] *See* Case No. 23-60394, ECF No. 89.

[31] *See* Case No. 23-60394, ECF No. 114.

[32] *Id.*

[33] *See* Def.'s Mot. for Summ. J., ECF No. 41.

[34] *See* Case No. 23-60394, ECF No. 161.

[35] *Id.*

### III. Summary Judgment Standard

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).[36]

Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure 56 so as to apply to adversary proceedings. Thus, if summary judgment is appropriate, the Court may resolve the case as a matter of law.

The moving party always bears the initial responsibility of informing the court of the basis for its motion and any evidence which it believes demonstrates the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of proof at trial. If, as in this case, the nonmovant "bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.,* 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).

"A fact is material only if its resolution would affect the outcome of the action..." *Wiley v. State Farm Fire and Cas. Co.,* 585 F.3d 206, 210 (5th Cir. 2009). Thus, the nonmovant must evince more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). If the nonmoving party were to present these factual disputes at trial, they must be such that a rational fact finder might find in favor of the nonmoving party. *Id.* at 587. "All reasonable inferences must be viewed in the light most favorable" to the nonmoving party, and "any doubt must be resolving in favor of the nonmoving party." *In re Louisiana*

---

[36] Pursuant to the scheduling order issued in this adversary proceeding, motions for summary judgment are required to comply in format and content with Local District Court Rule CV-56 and such motions shall be decided under the procedures stated therein.

*Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (citing *Matsushita*, 475 U.S. at 586.).

## IV. Analysis

The question before the Court is whether a genuine dispute of material fact exists regarding the propriety of the Niswongers' claimed annuity exemption and homestead designation.  The Niswongers contend that summary judgment is warranted because their Annuity, Athens Home, and Texas Properties are indisputably exempt, and NLAC and the Trustee cannot prevail on their objections under 11 U.S.C. § 727(a)(3), and (a)(5).[37]  NLAC and the Trustee respond that summary judgment is precluded because the Niswongers purchased the Annuity and Texas Properties as part of a scheme to defraud creditors.[38]  The Court finds after reviewing the summary judgment evidence that genuine issues exist.

### A.  § 522 Exemptions

The Niswongers may benefit from Texas state exemptions pursuant to 11 U.S.C. § 522.  *See* 4 Collier on Bankruptcy ¶ 522.01 (16th 2025).  Section 522(b)(1) states, ". . .an individual debtor may exempt from property of the estate the property listed in. . .paragraph (3) of this subsection."  11 U.S.C. 522(b)(1).  Paragraph 3 of that section states:

> . . .any property that is exempt under. . .State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period, or for a longer portion of such 180-day period than in any other place. . .

11 U.S.C. § 522(b)(3)(A).  At its most simple, this provision permits a debtor

---

[37] *See* Def.'s Mot. for Summ. J., ECF No. 41.

[38] *See* Tr.'s Resp., ECF No. 52; and Pl.'s Resp., ECF No. 53.

to claim a state's exemptions only after residing there for two years.  No party disagrees that the Niswongers moved to Texas sometime in July 2020.  The Niswongers filed for bankruptcy on August 16, 2023, three years after moving to Texas.  Therefore, Texas exemptions apply.

### B.  The Annuity

The Niswongers argue the Annuity is exempt under Texas law because: (1) the exception in Tex. Ins. Code § 1108.053 did not "exist" when they purchased the Annuity, (2) Wells Fargo agreed to the purchase of the Annuity, (3) NLAC and the Trustee have not identified a defrauded creditor, and (4) the statute of limitations has expired.[39]  In their responses, NLAC and the Trustee cite to deposition testimony, affidavits, and an expert report to raise genuine issues of material fact with respect to the Annuity's exemptions status.

### 1.  "Fraud" and Tex. Ins. Code § 1108.051-53

The Texas annuity exemption statute grants protection to debtors in bankruptcy, but is tempered by an express limitation for premium payments made "in fraud of a creditor."  *See* Tex. Ins. Code §§ 1108.051-.053.  The Niswongers argue the Annuity is exempt under Tex. Ins. Code § 1108.051(a)(1) but simultaneously argue that the fraud provision of that statute does not apply.[40]  The Court finds the fraud provision applicable. Supreme Court precedent establishes that ". . .when a debtor claims a state-created exemption, the exemption's scope is determined by state law, *which may provide that certain types of debtor misconduct warrant denial of the exemption.*"  *Law v. Siegel*, 571 U.S. 415, 425 (2014) (emphasis added); *see also In re Zibman*, 268 F.3d 298, 304 (5th Cir. 2001) ("it is the *entire* state law applicable on the filing date that is determinative").

Furthermore, § 1108.053 titled "Exceptions to Exemptions," states that the annuity exemption does not apply to ". . .a premium payment made *in fraud of a creditor. . .*"  *See* Tex. Ins. Code § 1108.053(1) (emphasis added). This language forms the basis of NLAC and the Trustee's objections.  Does

---

[39] *See* Def.'s Mot. for Summ. J., ECF No. 41.

[40] *Id.*

the Niswongers' purchase of the Annuity constitute a "premium payment made in fraud of a creditor" as contemplated by Tex. Ins. Code § 1108.053?

To decide, the Court looks to precedent.  In *Soza*, the Fifth Circuit clarified that "fraud" in this context includes "badges of fraud."  *In re Soza*, 542 F.3d 1060, 1066 (5th Cir. 2008).  In that case, the debtors purchased an annuity one day before filing for bankruptcy.  *Id.*  The *Soza* court stated that "[b]ecause Tex. Ins. Code § 1108.053 uses the general phrase "in fraud of a creditor[,]" rather than specific language requiring intent to defraud[,] we conclude that it encompasses both intentional fraud and *conduct less than intentional fraud.*" *Id.* at 1065 (emphasis added).  The court further explained that courts must apply a non-exclusive list of factors, the "badges of fraud," to guide their decisions.  *Id. at* 1066.  These badges include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of events and transactions under inquiry.

*Soza*, 542 F.3d *at* 1067.  The *Soza* court emphasized that "[w]hen several of these indicia of fraud are found, they can be a proper basis for an inference of fraud." *Id.* (*citing Roland v. United States,* 838 F.2d 1400, 1402–03 (5th Cir.1988)).

NLAC and the Trustee have pled facts that evince genuine disputes of material fact on several badges of fraud.  For example, in its response and objection, NLAC attached an affidavit by Micheal J. Henry–NLAC's Senior Vice President.[41]  In his affidavit, he alleges that NLAC was not made aware that the Niswongers' daughter sold them the lifetime annuity until the

---

[41] *See* Pl.'s Resp., Ex. A. at 1, ECF No. 53.

discovery phase of the California Action.[42]  This close familial relationship supports a possible inference that the Niswongers' purchase of the Annuity was made "in fraud of a creditor."

The Trustee attached exhibits produced by the Niswongers which purport to list their assets, their respective worth over the years since the Camp Fire, and an indication of whether the asset is exempt, closed, sold, or "at risk."[43]  Exhibits A-1 and A-2, for example, are documents produced by the Niswongers in the California Action that denote the exemption status and source of a respective asset.[44]  When questioned about these exhibits during her deposition, Mrs. Niswonger claims to have provided the information, but alleges that her nephew, Ronald Rohde, was the one who prepared the document itself.[45]

The chronology and timing of the Annuity purchase also raise questions that the premium payment could have been made in fraud of a creditor.  The Niswongers received the first installment of their insurance proceeds in the amount of $1,439,000.00, on December 12, 2018.[46]  Not all of the proceeds were exempt from seizure under California's homestead laws.[47]  Eight days later, on December 20, 2018, the Niswongers purchased the Annuity for $1,000,000.00.  On February 28, 2019, approximately three months after the Camp Fire, Wells Fargo agreed to another extension with the then principal balance of $1,133,936.53 due one year later on February 15, 2020.  Questions remain concerning when the Niswongers disposed of non-exempt assets in exchange for exempt assets, what was exempt when, and the Niswongers motivations, which the summary judgment evidence does not answer.

---

[42] *Id.* at 7.

[43] *See* Tr.'s Resp. Exs. A-1 to A-3 and B at 122-130, ECF No. 52.

[44] *Id.*

[45] *See* Tr.'s Resp., Ex. B at 20 and 129, ECF No. 52.

[46] *See* Def.'s Mot. for Summ. J. at 3, ECF No. 41;

[47] *See* Cal. Civ. Proc. Code § 704.720; and Cal. Civ. Proc. Code § 704.730 (capping the California homestead exemption at $600,000.00)

The familial relationship surrounding the purchase of the Annuity, the pendency or threat of suits by Wells Fargo (later NLAC), the uncertainties of timing, and difficulty discerning who knew what when, all raise genuine issues about whether the purchase of the Annuity was made "in fraud of a creditor" for purposes of Tex. Ins. Code § 1108.053(1).[48]

## 2. Statute of Limitations

The Court finds that NLAC has raised a genuine dispute about whether the statute of limitations expired before it filed its complaint.[49]  The Niswongers' argument, to the contrary, is premised on Tex. Civ. Prac. & Rem. Code § 16.004 which states that a party must bring fraud-based causes of action no later than "four years after the day *the cause of action accrues*." Tex. Civ. Prac. & Rem. Code § 16.004.  Under Texas's "discovery rule" the limitations period for a fraud claim begins when the plaintiff knew or should have known of facts that would prompt a reasonably prudent person to investigate.  *See Petrobas Am., Inc. v. Samsung Heavy Indus. Co.* Ltd., 9 F.4th 247 (5th Cir. 2021).

Determining what NLAC or Wells Fargo knew and when they knew it is a task for a fact finder.  The Niswongers insist that the cause of action began to accrue on December 20, 2018, and ran on December 20, 2022.[50] According to this timeline, NLAC filed its complaint approximately 13 months too late.[51]  NLAC raises a factual dispute about this through its summary judgment evidence.  In an affidavit by NLAC's Senior Vice President, he states:

> "[i]n discovery in the [California litigation] and in these proceedings we learned several things, including that Mr. Niswonger's daughter Arlauna Mauk was an employee of

---

[48] The Court is not deciding whether NLAC or the Trustee have proven that a premium payment was made in fraud of a creditor, but only whether a genuine dispute of material fact exists.

[49] *See* Def.'s Mot. for Summ. J. at 10, ECF No. 41.

[50] *Id.*

[51] Four years after December 20, 2018, is December 20, 2022.

> State Farm and had assisted the [Niswongers] in obtaining
> a $1,000,000 lifetime annuity within a month of the Camp
> Fire and immediately after the debtors received their first
> large Allstate insurance check of $1,439,000.00.[52]

The statements in Mr. Henry's affidavit contradict the Niswongers' argument that the purchase date of the Annuity should be the date the cause of action began to accrue.  Therefore, determining when NLAC or the Trustee knew or should have known of the injury presents a fact issue for trial.

### C.  Homestead Exemption

Genuine disputes of material fact exist as to whether the Athens Home and Texas Properties are exempt under Texas law.  This Court is bound by the relevant Texas statutes and its judicial interpretations when determining the scope of state homestead exemptions.  *See* 43 Tex. Jur. 3d Homestead § 10; and 4 Collier on Bankruptcy ¶ 522.10 (16th 2025).

Texas provides generous homestead protections through its state constitution and statutes.  *See* 43 Tex. Jur. 3d Homestead § 10; Tex. Const. art. XVI, § 50(a); Tex. Prop. Code. § 41.002.  The constitutional provision solidifies the concept of "homestead" as a fundamental right, and the Tex. Prop. Code defines the nature and scope of that right.  *Id.*  The Niswongers assert a homestead exemption in their Amended Schedule C pursuant to article XVI, § 50(a) of the Texas Constitution and Texas Property Code §§ 41.001 through 41.002.[53]  NLAC and the Trustee argue that the Niswongers' homestead claim should be reduced pursuant to 11 U.S.C. § 522(o).[54]

11 U.S.C. 522(o) permits a creditor or trustee to challenge and seek to reduce a debtor's homestead exemption if the debtor converted non-exempt assets into homestead equity with intent to hinder, delay or defraud a creditor.  It states:

> [T]he value of an interest in—(1) real or personal property that

---

[52] *See* Pl.'s Resp. at 3, ECF No. 53.

[53] *See* Case No. 23-60394, ECF No. 8.

[54] *See* Pl.'s Resp. at 19-21, ECF No. 53; and Tr.'s Resp. at 17-20, ECF No. 52.

the debtor or a dependent of the debtor uses as a residence. . .
shall be reduced to the extent that such value is attributable to
any portion of any property that the debtor disposed of in the
10-year period ending on the date of the filing of the petition *with
the intent to hinder, delay, or defraud a creditor* and that the
debtor could not exempt, or that portion that the debtor could not
exempt, under subsection (b), if on such date the debtor had held
the property so disposed of.

11 U.S.C § 522(o)(emphasis added).  Put simply, to reduce the value of a
debtor's homestead under § 522(o), a creditor must show that: (1) the debtor
disposed of property within ten years before filing; (2) this property was
nonexempt; (3) the proceeds were used to buy, improve, or pay down debt on a
homestead (or a dependent's residence); and (4) the debtor acted with intent
to hinder, delay, or defraud a creditor.  *See In re Sissom,* 366 B.R. 677, 688
(Bankr. S.D. Tex. 2007).

NLAC and the Trustee claim the Niswongers disposed of the insurance
proceeds by purchasing the Athens Home and Texas Properties to avoid
repaying the Loan, and that the amount paid exceeds the amount that could
be otherwise claimed as homestead.[55]  To determine whether insurance
proceeds are exempt or non-exempt, courts must apply the "snapshot rule"
which states that exemptions "...are determined at the time the bankruptcy
petition is filed, and...do not change due to subsequent events." *In re Frost*,
744 F.3d 384, 386 (5th Cir. 2014) (*citing In re Zibman*, 268 F.3d 298, 302 (5th
Cir. 2001)).  Under § 41.001(c) of the Texas Property Code, "[t]he homestead
claimant's proceeds of a sale of a homestead are not subject to seizure for a
creditor's claim for six months after the date of sale." Tex. Prop. Code §
41.001(c).  In Texas, this includes insurance proceeds of up to six months
after being paid out.  *See In re Carlew,* 469 B.R. 666, 675 (Bankr. S.D. Tex.
2012), *aff'd sub nom*; and *West v. Carlew*, No. BR 11-37886-H4, 2012 WL
3002197 (S.D. Tex. July 23, 2012).

In support of its response, NLAC attached a Rule 26(a)(2)(B) disclosure
report ("NLAC's Expert Report").[56]  NLAC's Expert Report alleges that,

---

[55] *See* Pl.'s Resp. at 19, ECF No. 53.

[56] *See* Pl.'s Resp., Ex. D, ECF No. 53.

although the Niswongers received insurance proceeds from Allstate totaling $3,020,988.00, the expert could not determine how $1,079,623.48 of the proceeds were spent.[57]  It also states, "[d]ocuments produced to NLAC in the California Action and in this bankruptcy proceeding do not fully account for expenditures of the Nonexempt Proceeds."[58]  NLAC's Expert Report, coupled with an affidavit by NLAC's Senior Vice President raises a genuine dispute about whether the Niswongers may exempt all or some of their real property as a Texas homestead.

### D.  NLAC's Discharge Objection under § 727

Genuine disputes of material fact preclude summary judgment on NLAC's objections to discharge under 11 U.S.C. § 727.  Section 727 requires the Court to grant a chapter 7 discharge unless the objecting party proves one of the enumerated grounds for denial set forth in § 727(a)(1)–(12).  *See* 6 Collier on Bankruptcy ¶ 727.01 (16th 2025).  NLAC seeks to deny the Niswongers a discharge under 11 U.S.C. §§ 727(a)(3) and (5).[59]  Under § 727(a)(3), the Court is required to deny a discharge when the plaintiff demonstrates that the debtor failed to keep or preserve adequate financial records and the debtor cannot justify that failure under the circumstances.  *See* 11 U.S.C. 727(a)(3); *In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003); and 6 Collier on Bankruptcy ¶ 727.03 (16th 2026).  Under § 727(a)(5), the court likewise is required to deny discharge when the plaintiff proves that the debtor failed to satisfactorily explain the loss or deficiency of assets necessary to meet liabilities.  *See* 11 U.S.C. § 727(a)(5).

The Niswongers fall short in arguing that there is no genuine dispute that they are entitled to a discharge despite NLAC's § 727 objections.  In support of their argument, they allege the following:

> The Niswongers have produced tax returns from 2017 to 2022. They have provided all the documents and information requested by the Trustee and have not withheld information. They are entitled to a discharge. . .The Plaintiff has come forward with no

---

[57] *Id.* at 8.

[58] *Id.* at 13.

[59] *See* ECF No. 1.

evidence of missing property or a failure to report the property and financial affairs of the Niswongers. The Niswongers are entitled to a discharge.[60]

The Niswongers have not, through their pleadings or summary judgment evidence, demonstrated the absence of a genuine issue of material fact.[61]  On the contrary, NLAC's Expert Report constitutes proper evidence which tends to raise a dispute as to whether the Niswongers failed to keep or preserve adequate financial records or failed to satisfactorily explain the loss or deficiency of assets necessary to meet liabilities.[62]  Accordingly, a trial should be set on whether NLAC may prevail on its objections under § 727.

## V. Conclusion

Genuine disputes of material fact remain as to the exemption status of the Niswongers' Annuity, Athens Home, Texas Properties, and NLAC's objections under 11 U.S.C. § 727.  Therefore, Summary Judgment is **DENIED**.

Signed on 4/15/2026

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE

---

[60] Def.'s Mot. for Summ. J. at 19-20, ECF No. 41.

[61] *See* Fed. R. Bankr. P. 7056; 179 Am. Jur. Trials 351.

[62] *See* Pl.'s Resp., Ex. D at 13, ECF No. 53 ("Documents produced to NLAC in the California Litigation and in this bankruptcy proceeding are incomplete. I have been unable to trace all of the insurance proceeds and California lot proceeds into Debtor bank accounts and I am also unable to complete my tracing of the uses of cash due to missing records.")